**BHP DE VENEZULA, C.A., a/k/a BHP Venca, Appellant,**

v.

**Eugene Paul CASTEIG, Appellee.**

No. 13–98–624–CV.

Court of Appeals of Texas, Corpus Christi.

May 27, 1999.

---

Keith B. Sieczkowski, Corpus Christi, for appellant.

Francis I. Spagnoletti, Spagnoletti & Associates, James T. Liston, Houston, for appellee.

Before: Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION ON MOTION FOR REHEARING

RODRIGUEZ, J.

We overrule appellee's motion for rehearing, withdraw our opinion dated May 6, 1999, and substitute the following opinion in its place.

Appellee Eugene Casteig brought suit in Nueces County against BHP Engineering and Consulting ("E & C")[1] and BHP de Venezuela ("Venca") claiming he was entitled to unemployment benefits under Venezuelan law for consulting services he performed in Venezuela. Venca filed a special appearance, which the trial court denied. This is an interlocutory appeal from that denial.[2] We reverse the trial court's order and dismiss for lack of personal jurisdiction.

Venca is a foreign corporation organized and established under Venezuelan law. Its corporate residence and principal place of business are in Venezuela. It was formed in January 1992 with E & C as a 19% shareholder. Venca was formed to provide engineering services to companies in Venezuela. Venca has conducted no business since 1994.

E & C is incorporated in the state of Texas and has offices in Nueces and Victoria Counties, Texas.

The day-to-day operations of Venca were coordinated by Alejandro Garcia and Joe Burch. Burch was the president of Venca and the secretary/treasurer of E & C. It is undisputed that Burch was a Texas resident. It is further undisputed that Burch assisted in the day-to-day operations of Venca while he was located in Venezuela.

E & C and Venca entered into a Technical Services Agreement ("Agreement") which provided, *inter alia*, that Venca may request that E & C send qualified professionals to Venezuela to assist Venca on various projects as needed. Venca could also send personnel to Texas for training. The Agreement further provided that E & C would assist Venca in acquiring equip-

---

1. E & C is not a party to this appeal as it is a corporation doing business in Texas.

2. TEX.CIV.PRAC. & REM.CODE ANN § 51.014(a)(7) (Vernon Supp.1999).

ment needed for its projects. The Agreement was entered into in Venezuela, was registered in Venezuela, and chose Maracaibo, Venezuela as its domicile for all matters arising under the contract.

Eugene Casteig was an employee of E & C. Pursuant to the Agreement, E & C sent Casteig to Venezuela to assist Venca on its engineering projects. Venca paid E & C for Casteig's services. When Venca closed its doors, there obviously was no longer a need to have Casteig in Venezuela and he was instructed to return to Texas.

Under the Agreement, E & C sold approximately $95,000 worth of equipment to Venca. This equipment was delivered to Venca in Venezuela with payment being made to E & C's account at a Venezuelan bank.

On July 29, 1996, Casteig filed suit for breach of an employment contract and wrongful termination against E & C and Venca. Venca filed a special appearance, which the trial court denied. Venca appeals the denial of its special appearance.

In issues one, thirteen, and fourteen, Venca argues the trial court erred in denying its special appearance.

In Texas, personal jurisdiction over a nonresident defendant is proper only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996); *J & J Marine, Inc. v. Le*, 982 S.W.2d 918, 923 (Tex.App.—Corpus Christi 1998, no pet. h.). The Texas long-arm statute permits a court to exercise personal jurisdiction over a nonresident defendant doing business in Texas. TEX.CIV.PRAC. & REM .CODE ANN. § 17.042 (Vernon 1997). The long-arm statute provides, *inter alia*, that a nonresident defendant is doing business in

Texas within the meaning of the statute if it directly or through an intermediary "recruits" Texas residents for employment. *Id.* The Texas Supreme Court has consistently interpreted the statutory language "to reach as far as the federal constitutional requirements of due process will allow." *CSR Ltd.*, 925 S.W.2d at 594 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991)). Accordingly, the Texas long-arm statute requirements are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd.*, 925 S.W.2d at 594; *see Guardian Royal*, 815 S.W.2d at 226.

Compliance with the Texas long-arm statute and federal due process requires a plaintiff to show that the defendant has established "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Guardian Royal*, 815 S.W.2d at 230; *Schroeder v. Valdez*, 941 S.W.2d 312, 314 (Tex.App.—Corpus Christi 1997, no writ). There must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *Guardian Royal*, 815 S.W.2d at 230; *Schroeder*, 941 S.W.2d at 314. A nonresident defendant who purposefully avails itself of the privileges and benefits of doing business in this state has sufficient contacts to confer personal jurisdiction. *CSR Ltd.*, 925 S.W.2d at 594; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Minimum contacts may give rise to either specific or general jurisdiction. *CSR Ltd.*, 925 S.W.2d at 594. General jurisdiction requires there to be continuous and systematic contacts between the nonresident defendant and Texas. *CSR Ltd.*, 925 S.W.2d at 594; *Guardian Royal*, 815 S.W.2d at 228; *Schroeder*, 941 S.W.2d at 314. Such contacts permit Texas courts to

exercise personal jurisdiction over a defendant even though the cause of action did not arise from or relate to activities conducted within the forum state. *CSR Ltd.,* 925 S.W.2d at 594; *see Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). General jurisdiction requires a showing of "substantial" activities by the nonresident defendant in Texas, a more demanding minimum contacts analysis than for specific jurisdiction. *CSR Ltd.,* 925 S.W.2d at 594; *Guardian Royal,* 815 S.W.2d at 228; *Schroeder,* 941 S.W.2d at 314.

■ Specific jurisdiction, on the other hand, is established where the defendant's alleged liability arises from or is related to an activity purposefully directed toward the forum state. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868; *CSR Ltd.,* 925 S.W.2d at 595; *Schroeder,* 941 S.W.2d at 314. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Guardian Royal,* 815 S.W.2d at 228.

■ Aside from "minimum contacts," due process also requires that the assertion of personal jurisdiction comport with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Guardian Royal,* 815 S.W.2d at 231; *Juarez v. United Parcel Serv. de Mex. S.A. de C.V.,* 933 S.W.2d 281, 284 (Tex.App.—Corpus Christi 1996, no writ). The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal,* 480 U.S. at 115, 107 S.Ct. 1026; *Guardian Royal,* 815 S.W.2d

at 231; *United Parcel Serv.,* 933 S.W.2d at 284.

■ Furthermore, when an international dispute is involved, this Court must also consider: (1) the unique burdens placed upon the defendant that must defend itself in a foreign legal system; and (2) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies. *Asahi Metal,* 480 U.S. at 115, 107 S.Ct. 1026; *Guardian Royal,* 815 S.W.2d at 229; *United Parcel Serv.,* 933 S.W.2d at 284.

■ On appeal from a special appearance, this Court reviews all the evidence in the record. *J & J Marine,* 982 S.W.2d at 924; *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *General Elec. Co. v. Brown & Ross Int'l,* 804 S.W.2d 527, 529–30 (Tex.App.—Houston [1st Dist.] 1990, writ denied). To sustain a special appearance, the nonresident defendant must negate all bases of personal jurisdiction. *CSR Ltd.,* 925 S.W.2d at 596.

■ Existence of personal jurisdiction is a question of law. However, the proper exercise of personal jurisdiction sometimes must be preceded by the resolution of underlying factual disputes. We review the appropriateness of the trial court's resolution of those facts under an ordinary sufficiency of the evidence standard. *J & J Marine,* 982 S.W.2d at 924; *ContiCarriers,* 944 S.W.2d at 411; *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). We will consider all the evidence that was before the trial court, including the pleadings, any stipulations, affidavits and exhibits, the results of discovery, and any oral testimony. *J & J Marine,* 982 S.W.2d at 924; *ContiCarriers,* 944 S.W.2d at 411; *Vosko,* 909 S.W.2d at 99.

■ While the trial court's findings of fact have the same force and dignity as a

jury's verdict, *see Taiwan Shrimp Farm Village Ass'n v. U.S.A. Shrimp Dev., Inc.*, 915 S.W.2d 61, 70 (Tex.App.—Corpus Christi 1996, writ denied), they are not conclusive when a complete reporter's record is presented on appeal. *See Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.—San Antonio 1995, writ denied). We may not disregard findings of fact if the record contains some evidence of probative value from which inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *J & J Marine*, 982 S.W.2d at 925; *Al–Turki v. Taher*, 958 S.W.2d 258, 260 (Tex.App.—Eastland 1997, pet. denied); *De Prins v. Van Damme*, 953 S.W.2d 7, 13 (Tex.App.—Tyler 1997, pet. denied). We review the trial court's conclusions of law for correctness. *J & J Marine*, 982 S.W.2d at 925; *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997, pet. denied).

 To determine whether the trial court could properly assert general jurisdiction over Venca, this Court will review all of Venca's contacts with Texas to ascertain whether any such contacts were substantial, continuous, and systematic.

In the instant case, the record clearly reflects that Venca entered into the Agreement with E & C, a Texas corporation. The Agreement was executed, registered, and domiciled in Venezuela. Pursuant to the Agreement, Casteig, who was an employee of E & C, went to Venezuela to perform engineering consulting services for Venca. Venca had no involvement in the decision to employ Casteig. E & C did not hire any employees on behalf of Venca. While Casteig worked in Venezuela, Venca was billed by E & C for his services. Casteig, on the other hand, was paid by E & C.

Venca purchased approximately $95,000 worth of computer equipment from E & C. The equipment was shipped to Venca from Texas and payment was made by Venca to E & C's account at a Venezuelan bank. While the Agreement provided that Venca could send its employees to E & C in Texas for training, no employees ever traveled to Texas on behalf of Venca.

Joe Burch was the president of Venca and secretary/treasurer of E & C. Burch resided in Texas and traveled between Texas and Venezuela on numerous occasions. Burch did not travel to Texas as an employee or representative of Venca. Burch did not conduct business on behalf of Venca while in Texas. Burch communicated by telephone with Venca management approximately ten times for the purpose of collecting information for E & C on the performance of Venca. There was no other communication between Venca and E & C. There were approximately four Venca shareholder's meetings, all of which were held in Venezuela. Burch retains some Venca files in his Texas office.

Venca never owned, leased, or rented property in Texas. It did not own or rent vehicles, equipment, or other property in Texas. It had no houses, trailer houses, offices, or buildings that it owned, rented, leased, or operated in Texas. It did not have any accounts with financial institutions in Texas.

While the trial court found the above evidence constituted substantial activities purposefully directed toward Texas, we find any contacts Venca may have had with Texas were neither continuous nor systematic, but merely fortuitous. Courts have consistently held "random," "fortuitous," or "attenuated" contacts such as the ones in the case before us are insufficient to subject a non-resident defendant to suit in this state. *See Helicopteros*, 466 U.S. at 411–12, 416, 104 S.Ct. 1868 (holding Texas court did not have personal jurisdiction over a foreign business even where the foreign business had purchased $4 million worth of products in Texas, had sent employees to train in Texas, and payments were drawn on a Texas bank); *CSR Ltd.*, 925 S.W.2d at 595 (emphasizing defendant should not be subject to the jurisdiction of a foreign court based upon "random," "for-

tuitous," or "attenuated" contacts); *J & J Marine*, 982 S.W.2d at 926–27 (holding Texas court did not have personal jurisdiction where nonresident defendant sold seven shrimp boats to Texas residents, amounting to $3.5 million in revenue; made several phone calls to Texas residents, one of which could be construed as soliciting business; and filed application for admeasurement in Texas); *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 417 (Tex.App.—Houston [14th Dist.] 1997, no writ) (holding nonresident defendant did not establish "continuous and systematic" contacts even though it had a certificate of authority to do business in Texas; maintained an agent for service of process in Texas; filed franchise tax returns in Texas; sent barges to Texas ports; had contacts with Texas businesses; earned yearly revenue from barges loaded or unloaded in Texas; hired Texas employees; and litigated in a Texas court); *Reyes v. Marine Drilling Cos., Inc.*, 944 S.W.2d 401, 404 (Tex.App.—Houston [14th Dist.] 1997, no writ) (holding nonresident corporation that designed portion of drilling rig on which worker was injured did not have "minimum contacts;" although corporation sent representatives to companies in Texas when visits were necessitated by contractual obligations and made numerous purchases of equipment in Texas from various suppliers). Accordingly, we hold that Venca did not have "systematic and continuous" contacts sufficient to confer general jurisdiction upon Texas courts.

■ We next consider whether Venca's contacts were sufficient to confer specific jurisdiction. Casteig contends specific jurisdiction is proper because his claim arises from the Agreement between E & C and Venca. Specifically, he asserts that pursuant to the Agreement he was "recruited" to work for Venca. As noted above, the Texas long-arm statute extends to nonresident defendants who "recruit" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042(3) (Vernon 1997). Therefore, the dispositive

issue before us is whether Venca recruited Casteig.

To answer this question, we look to the language of the Agreement upon which Casteig relies. The Agreement specifically stated that "BHP–Venca may request technical assistance from BHP–Corpus by means of the participation of specialized foreign personnel in specific projects under the control and execution [of] BHP–Venca, either the client's direct request or by prompt requirement for the continued proper operation of BHP–Venca." We read this language to provide that upon request from Venca, E & C would send E & C employees to Venezuela as consultants on Venca projects. The Agreement contains no language that is indicative of recruiting. Furthermore, we note that Casteig was never recruited by E & C, he unilaterally sought employment at E & C, and was already an employee of E & C when he was sent to Venezuela. We, therefore, hold there is no basis for the exercise of specific jurisdiction over Venca.

■ Assuming, *arguendo*, that personal jurisdiction was otherwise proper, we further hold that to require a foreign company to be hailed into a Texas court to defend itself in a suit whereby a Texas court would apply Venezuelan law to an agreement executed and performed in Venezuela would not comport with notions of fair play and substantial justice. We sustain Venca's first, thirteenth, and fourteenth issues.

Having sustained the above points, we need not address Venca's remaining issues. TEX.R.APP.P. 47.1.

The trial court's order denying Venca's special appearance is REVERSED and we REMAND this cause to the trial court with orders that it DISMISS as to Venca for lack of personal jurisdiction.