**Phil LACEFIELD, Appellant,**

v.

**ELECTRONIC FINANCIAL GROUP, Appellee.**

**No. 10–00–205–CV.**

Court of Appeals of Texas, Waco.

Dec. 20, 2000.

T. Bradley Cates, Waco, for appellant.

Stephen R. Fontaine, Stephen R. Fontaine, P.C., Waco, for appellee.

Before Chief Justice DAVIS, Justices VANCE and GRAY.

## OPINION

DAVIS, Chief Justice.

Phil Lacefield appeals the denial of his special appearance. He claims in two points that the court erred by: (1) admitting hearsay evidence in the hearing on his special appearance; and (2) denying his special appearance. We will reverse the court's order and render judgment sustaining the special appearance.

## BACKGROUND

Lacefield resides in Tennessee. He is the president of PBS Company, a Tennessee corporation. On PBS's behalf, Lacefield signed an Electronic Services Agreement with SurePay, a division of eCollect, Inc., a bank service provider which has its principal place of business in Pennsylvania. Under the contract, SurePay agreed to provide the following services to PBS:

- point of sale check conversion, whereby paper checks are converted to electronic funds transfers for origination through the Automated Clearing House (ACH) Network;
- accounts receivable check conversion, whereby paper checks are converted into electronic funds transfers at the end of the business day and originated through the ACH network; and
- electronic check re-presentment, whereby NSF (non-sufficient funds) checks are converted into electronic debits and originated through the ACH network.

The agreement further provides that Sure-Pay is "responsible for transmitting entries through a third party originator to the Federal Reserve Bank."

Magic Processing Company, a Colorado entity, contracted with Electronic Financial Group, Inc. ("PHAGE"), a Texas corporation, to be the third party originator for the checks transmitted from PBS to SurePay.[1] When EFG processed PBS's transactions, it made electronic deposits "in due time" to PBS's account at the First American Bank of Memphis. EFG alleges that each of the checks it processed for PBS was ultimately dishonored by its maker. As a result, EFG claims that Lacefield owes it $113,932 for the dishonored checks.

EFGG filed suit against Lacefield and First American Bank of Memphis in a McLennan County district court. EFG named the bank as a defendant to prevent the bank from releasing the disputed funds to Lacefield. The court granted EFG a temporary injunction prohibiting the bank from permitting Lacefield to withdraw any of the disputed funds.

EFGG alleges in its First Amended Petition that Lacefield is amenable to personal jurisdiction in Texas because the contract he signed with SurePay on behalf of PBS provides that SurePay will transmit PBS's transactions "through a third party originator." The petition further avers that:

> [EFGFG] is the "third party originator" provided for in the contract. [EFG's] cause of action against Defendant Lacefield is based upon fraudulent items created by Lacefield and for which he received payment through a bank in Texas. Therefore, this state has acquired specific jurisdiction to adjudicate controversies involving the items deposited in this state.

Lacefield filed a special appearance alleging that he is not a resident of Texas, does not have sufficient minimum contacts with Texas to be subject to personal jurisdiction in this state, and the exercise of jurisdiction by the Texas court "owled offend traditional notions of fair play and substantial justice." Lacefield filed an affidavit in support of his special appearance stating in part:

> I have never conducted business with [EFG], nor any of its agents, subsidiaries, or divisions. I have never corresponded with EFG in any manner, nor have I contracted with EFG for any purpose. This action by EFG is based upon transactions pertaining directly to my company's contract with SurePay relating to financial transactions, deposits and transfers. EFG may have served as a depository or transferring agency at the behest of eCollect, Inc. but has otherwise never been a party to the contract between PBS Company and eCollect, Inc., or the related transactions.
>
> . . . .
>
> The agreement by PBS Company, signed by myself, by which PBS Company agreed to bear the risk of uncollectible charges or electronic hot checks, and guaranteed that each such electron-

---

1. EFG President Jerry Federico also referred to Magic Processing Company as Magic Software in his testimony. The parties presented no evidence regarding the nature or contents of any agreement between SurePay and Magic Processing Company or between Magic Processing Company and EFG.

ic transaction represented a genuine order approved by the customer was with eCollect, Inc., as demonstrated in the attached Exhibit "A." I never, personally or as the authorized agent of PBS Company, entered into such an agreement with EFG. I also never, personally or as the authorized agent of PBS Company, requested that EFG process any electronic checks for myself or PBS Company. Any such requests were made to eCollect, Inc., through its main office or its divisions in Pennsylvania and Mississippi, pursuant to the contract attached hereto.

I never, personally or as the authorized agent of PBS Company, directed EFG to take any action, including the transfer of funds to bank accounts in Tennessee. The arrangements with eCollect, Inc. provided for such transfers by eCollect, Inc. or its agents or divisions. Any such request would have been by eCollect, Inc., not at my direction.

Prior to the instigation of this lawsuit I had no idea that a Texas company might be involved in these transactions in any way. Any involvement by EFG was at the request of eCollect, Inc., or in its regular course of business, which was acting as an independent contractor by virtue of its contract with PBS Company.

At the special appearance hearing, Lacefield appeared only by counsel, who relied solely on Lacefield's affidavit and the contract between PBS and SurePay. EFG presented the testimony of its president Jerry Federico. Federico testified that EFG received a request to process PBS's transactions from Magic Processing Company in Colorado. He confirmed that Lacefield never requested EFG to process these transactions. After being contacted by Magic Processing, an EFG representative called Lacefield to obtain additional information necessary to process PBS's transactions. The representative informed Lacefield that EFG is located in Texas and

would be the third party originator for the transactions. According to Federico, Lacefield did not voice any objections to EFG serving in this capacity.

Federico reiterated on cross-examination that Magic Processing contacted EFG about handling the processing of PBS's transactions and that Lacefield never initiated any communications with EFG. Rather, EFG contacted him to obtain additional information.

## SPECIAL APPEARANCE

Lacefield contends in his second point that he does not have sufficient minimum contacts to be amenable to personal jurisdiction in a Texas court or, alternatively, that the exercise of such jurisdiction does not comport with traditional notions of fair play and substantial justice.

### PERSONAL JURISDICTION

A Texas court may assert personal jurisdiction over a nonresident defendant only when the requirements of the Due Process Clause of the Fourteenth Amendment and of the Texas long-arm statute are satisfied. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996); *BHP de Venezuela, C.A. v. Casteig*, 994 S.W.2d 321, 325 (Tex.App.—Corpus Christi 1999, pet. denied) (op. on reh'g). The long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant doing business in the State. *Id.* (citing TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997)). The statute reaches "as far as the federal constitutional requirements of due process will allow." *Id.* (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991)). Thus, the requirements of the long-arm statute are satisfied whenever the requirements of federal due process are met. *Id.*

To satisfy federal due process, a court may assert personal jurisdiction over a nonresident defendant only when the defendant has sufficient minimum contacts

with Texas "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *CSR Ltd.*, 925 S.W.2d at 594. "A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction." *CSR Ltd.*, 925 S.W.2d at 594 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)); *accord BHP*, 994 S.W.2d at 325. Conversely, a nonresident defendant cannot be haled into a Texas court because of " 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980)); *CSR Ltd.*, 925 S.W.2d at 595.

■ A defendant's contacts can give rise to either general or specific jurisdiction. *See Burger King*, 471 U.S. at 472–73 & n. 15, 105 S.Ct. at 2182 & n. 15; *CSR Ltd.*, 925 S.W.2d at 595; *BHP*, 994 S.W.2d at 325. If either exists, then the nonresident defendant has sufficient minimum contacts with the forum state.

■ A court has general jurisdiction over a nonresident defendant when the defendant has engaged in continuing and systematic activities within the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *CSR Ltd.*, 925 S.W.2d at 595; *BHP*, 994 S.W.2d at 325. Stated another way, general jurisdiction exists when the nonresident defendant has conducted "substantial activities" within the forum state. *CSR Ltd.*, 925 S.W.2d at 595 (citing *Schlo-*

*bohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)); *BHP*, 994 S.W.2d at 326.

■ Conversely, specific jurisdiction exists when the nonresident defendant has " 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Keeton*, 465 U.S. at 774, 104 S.Ct. at 1478; *Helicopteros Nacionales*, 466 U.S. at 414, 104 S.Ct. at 1872); *accord CSR Ltd.*, 925 S.W.2d at 595; *BHP*, 994 S.W.2d at 326. To determine whether specific jurisdiction exists, the Court focuses on the "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales*, 466 U.S. at 414, 104 S.Ct. at 1872 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)); *accord Schlobohm*, 784 S.W.2d at 357; *BHP*, 994 S.W.2d at 326.

■ Beyond the minimum contacts analysis, the Court must also consider the contacts shown "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160); *accord Schlobohm*, 784 S.W.2d at 357; *BHP*, 994 S.W.2d at 326. These other factors include: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564; *Guardian Royal Exch. Assurance*, 815 S.W.2d at 231; *BHP*, 994 S.W.2d at 326; *accord Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

■ "Because the minimum contacts analysis now encompasses so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail a fair play analysis." *Schlobohm,* 784 S.W.2d at 357–58; *Fish v. Tandy Corp.,* 948 S.W.2d 886, 895 (Tex.App.—Fort Worth 1997, pet. denied). Thus, "[o]nly in rare cases" will the exercise of jurisdiction over a nonresident defendant who has purposefully established sufficient minimum contacts with the forum state not comport with fair play and substantial justice. *Guardian Royal Exch. Assurance,* 815 S.W.2d at 231; *Fish,* 948 S.W.2d at 895; *see also Burger King,* 471 U.S. at 476–78, 105 S.Ct. at 2184–85.

### BURDEN OF PROOF

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *See McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex.1965); *M.G.M. Grand Hotel, Inc. v. Castro,* 8 S.W.3d 403, 408 & n. 2 (Tex. App.—Corpus Christi 1999, no pet.); *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 633 (Tex.App.—Dallas 1993, writ denied). Upon the filing of a special appearance, the burden shifts to the nonresident defendant to negate all bases of personal jurisdiction. *See KPMG Peat Marwick,* 847 S.W.2d at 634; *McCulley Fine Arts Gallery, Inc. v. "X" Partners,* 860 S.W.2d 473, 480 (Tex.App.—El Paso 1993, no writ); *see also CSR Ltd.,* 925 S.W.2d at 596; *BHP,* 994 S.W.2d at 326.

■ Thus, the defendant must present evidence negating any jurisdictional facts alleged by the plaintiff with which the defendant takes issue. *See Temperature Sys., Inc. v. Bill Pepper, Inc.,* 854 S.W.2d 669, 673 (Tex.App.—Dallas 1993, writ dism'd by agr.); *Steve Tyrell Productions, Inc. v. Ray,* 674 S.W.2d 430, 436 (Tex. App.—Austin 1984, no writ). If the plaintiff fails to allege any jurisdictional facts,

the defendant satisfies his burden by showing that he is a nonresident. *See Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982); *Vosko v. Chase Manhattan Bank,* 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Temperature Sys.,* 854 S.W.2d at 673.

### STANDARD OF REVIEW

■ On appeal, we review "all the evidence that was before the trial court, including the pleadings, any stipulations, affidavits and exhibits, the results of discovery, and any oral testimony." *BHP,* 994 S.W.2d at 326; *McCulley Fine Arts Gallery,* 860 S.W.2d at 480; *see also* TEX. R.CIV.P. 120a(3). When the parties dispute the pertinent facts, we review the court's resolution of those disputed issues under a traditional factual sufficiency analysis. *See Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.— Houston [1st Dist.] 2000, pet. filed); *Cartlidge v. Hernandez,* 9 S.W.3d 341, 346 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Smith v. Lanier,* 998 S.W.2d 324, 330 (Tex.App.—Austin 1999, pet. denied); *BHP,* 994 S.W.2d at 326; *Ball v. Bigham,* 990 S.W.2d 343, 347 (Tex.App.—Amarillo 1999, no pet.); *E.I. DuPont De Nemours & Co. v. Bailey,* 986 S.W.2d 82, 83 (Tex. App.—Beaumont 1999, pet. dism'd w.o.j.); *MacMorran v. Wood,* 960 S.W.2d 891, 894 (Tex.App.—El Paso 1997, pet. denied); *De Prins v. Van Damme,* 953 S.W.2d 7, 13 (Tex.App.—Tyler 1997, pet. denied); *Fish,* 948 S.W.2d at 892; *KPMG Peat Marwick,* 847 S.W.2d at 632; *but see Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684, 689 (Tex.App.—San Antonio 1998, no pet.) (ruling on special appearance should be reviewed for abuse of discretion).[2]

■ To facilitate appellate review, a nonresident defendant should request findings of fact and conclusions of law if

---

**2.** The San Antonio Court of Appeals apparently stands alone in its belief that the abuse-of-

discretion standard applies. We follow the majority.

the court overrules his special appearance. *See Smith,* 998 S.W.2d at 329; *MacMorran,* 960 S.W.2d at 894. When the court makes no findings, we generally imply all findings necessary to support the judgment. *See Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987); *Smith,* 998 S.W.2d at 329–30; *Happy Indus. Corp. v. American Specialties, Inc.,* 983 S.W.2d 844, 847 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.); *MacMorran,* 960 S.W.2d at 894. "[I]mplied findings may be challenged by factual sufficiency and legal sufficiency points." *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989) (per curiam); *accord McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex.1986).

If the evidence supports implied findings in favor of the judgment, we must affirm the judgment on any legal theory supported by the evidence. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Happy Indus.,* 983 S.W.2d at 847; *MacMorran,* 960 S.W.2d at 894. We do so regardless of whether the trial court states the correct legal basis for its decision. *See MacMorran,* 960 S.W.2d at 894; *Fish,* 948 S.W.2d at 892.

After resolving any disputed fact issues, we review *de novo* the legal issue of whether the nonresident defendant is subject to personal jurisdiction in Texas. *See Dowelanco v. Benitez,* 4 S.W.3d 866, 870 (Tex.App.—Corpus Christi 1999, no pet.); *Hotel Partners v. Craig,* 993 S.W.2d 116, 120 (Tex.App.-Dallas 1994, writ denied). Logically, we apply the same standard when the facts are not disputed. *See Cartlidge,* 9 S.W.3d at 346; *Happy Indus. .,* 983 S.W.2d at 848.

### ANALYSIS

As plaintiff, EFG bears the burden of pleading sufficient allegations to bring Lacefield within the provisions of the Texas long-arm statute. *See McKanna,* 388 S.W.2d at 930; *M.G.M. Grand Hotel,* 8 S.W.3d at 408; *KPMG Peat Marwick,* 847 S.W.2d at 633. The burden shifted to Lacefield when he filed his special appearance to negate all bases of personal jurisdiction asserted in the petition. *See KPMG Peat Marwick,* 847 S.W.2d at 634; *McCulley Fine Arts Gallery,* 860 S.W.2d at 480; *see also CSR Ltd.,* 925 S.W.2d at 596; *BHP,* 994 S.W.2d at 326.

EFG's petition alleges that Lacefield is subject to specific jurisdiction in Texas because PBS's contract with SurePay provides that PBS's checks will be transmitted to a third party originator and because EFG is the third party originator selected by SurePay or a subsidiary to handle these transactions. EFG contends that, even assuming the contract standing alone constitutes a mere "fortuitous" contact, Lacefield consented to jurisdiction in Texas when he did not object to EFG acting as the third party originator for the PBS transactions.

Lacefield responds that, because SurePay or its subsidiary selected EFG to be the third party originator and because he did not participate in the decision to choose EFG to perform this service, any contacts he has with Texas by virtue of EFG's role as third party originator are merely "fortuitous."

Specific jurisdiction exists when a nonresident defendant has " 'purposefully directed' his activities at residents of the forum." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478); *accord CSR Ltd.,* 925 S.W.2d at 595. Conversely, a nonresident defendant cannot be haled into a Texas court because of " 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *CSR Ltd.,* 925 S.W.2d at 595.

The parties agree that Lacefield never initiated contact with EFG to serve as the third party originator for the transactions at issue in this case. Lacefield cannot be characterized as having "purposefully availed [him]self of the privileges and benefits of conducting business in [Texas]" merely by assenting in a telephone conver-

sation initiated by EFG to EFG serving as third party originator. *See CSR Ltd.*, 925 S.W.2d at 594; *see also Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182. Accordingly, we conclude that Lacefield's contacts with Texas are merely "fortuitous." *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *CSR Ltd.*, 925 S.W.2d at 595. Therefore, we sustain Lacefield's second point.

Because of our disposition of Lacefield's second point, we need not address his first point.

We reverse the court's order denying Lacefield's special appearance and render judgment sustaining the special appearance and dismissing this case for lack of personal jurisdiction over Phil Lacefield. *See Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 801 (Tex.App.—Houston [1st Dist.] 2000, no pet. h.); *Koch Graphics, Inc. v. Avantech, Inc.*, 803 S.W.2d 432, 435 (Tex. App.—Dallas 1991, no writ); Tex.R.App.P. 43.2(c); *see also* Tex.R.Civ.P . 120a(4).