**Rodger ZIMMERMAN, Appellant,**

v.

**GLACIER GUIDES, INC., and Jimmie Rosenbruch, Appellees.**

No. 10–03–00036–CV.

Court of Appeals of Texas, Waco.

Nov. 10, 2004.

Michael G. Cosby, Pakis, Giotes, Beard & Page, Waco, for appellant.

Bruce Burleson, Naman, Howell, Smith & Lee, P.C., Temple, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Austin, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Rodger Zimmerman filed suit against Glacier Guides, Inc. and its president Jim-

mie Rosenbruch for unjust enrichment after Glacier Guides refused to refund nearly $20,000 Zimmerman had paid for an Alaskan hunting expedition which Zimmerman was unable to attend due to the disruption of air travel after the September 11 tragedy. Zimmerman appeals the granting of Appellees' special appearance. He contends in his sole issue that the evidence is factually insufficient to support the court's decision. Because we conclude that Appellees presented sufficient evidence to negate all bases of personal jurisdiction asserted by Zimmerman, we will affirm.

## BACKGROUND

Zimmerman testified at the special appearance hearing that he first learned of Glacier Guides and Rosenbruch through an advertisement in the 1997 "Convention Issue" of *Alaska Professional Hunter* magazine, which Zimmerman obtained at a Safari Club International convention in Dallas or Houston. Zimmerman traveled to Las Vegas, Nevada in January 2001. While there he went to the Glacier Guides booth at the Safari Club convention and made arrangements for a September 2001 hunting expedition in Alaska. Zimmerman paid a $12,000 deposit and received a brochure. The hunt was scheduled for September 15, 2001.

Rosenbruch later sent Zimmerman a letter thanking him for his business and assuring him that the trip would be worthwhile. Rosenbruch also called Zimmerman twice, the latter time being in August 2001 to inquire whether Zimmerman had mailed the remainder of the monies owed for the trip.

Zimmerman's airline tickets were cancelled because of the events surrounding the terrorist attacks of September 11. Glacier Guides refused to give Zimmerman a refund. This lawsuit followed.

## STANDARD OF REVIEW

Zimmerman contends that the evidence is factually insufficient[1] to support the court's granting of the special appearance.

■ To prevail in a special appearance hearing, a nonresident defendant must negate all bases for personal jurisdiction alleged. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002). Appellees contend that they satisfied their burden by merely proving their nonresidence because Zimmerman failed to make factually-specific jurisdictional allegations in his petition. Zimmerman responds that the Supreme Court has rejected this approach.

It is true that this Court and others have held that, when a plaintiff fails to state specific jurisdictional allegations in the petition,[2] a nonresident defendant sat-

---

1. Actually, Zimmerman contends that the court's decision is "absolutely contrary to the overwhelming weight of the evidence." We construe this statement as a paraphrase of the factual insufficiency standard. *See Haskett v. Butts,* 83 S.W.3d 213, 218 (Tex.App.-Waco 2002, pet. denied) (finding will be set aside for factual insufficiency if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust"); *accord Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998).

2. Although the phrase "in the petition" does not appear in the sentence in *Lacefield* in

which this Court stated, "If the plaintiff fails to allege any jurisdictional facts, the defendant satisfies his burden by showing that he is a non-resident," numerous other references in the opinion indicate that this was the Court's intent. *Lacefield v. Electronic Fin. Group,* 35 S.W.3d 755, 761 (Tex.App.-Waco 2000, no pet.). For example, in analyzing the issue presented, the Court stated, "As plaintiff, EFG bears the burden of *pleading* sufficient allegations to bring Lacefield within the provisions of the Texas long-arm statute. The burden shifted to Lacefield when he filed his special appearance to negate all bases of per-

isfies the burden of proof at a special appearance hearing by proving the defendant's nonresident status. *E.g., Bruno's Inc. v. Arty Imports, Inc.,* 119 S.W.3d 893, 897 (Tex.App.-Dallas 2003, no pet.); *Lacefield v. Elec. Fin. Group,* 35 S.W.3d 755, 761 (Tex.App.-Waco 2000, no pet.); *Valsangiacomo v. Am. Juice Import, Inc.,* 35 S.W.3d 201, 205 (Tex.App.-Corpus Christi 2000, no pet.). On further review however, we conclude that the Supreme Court expressly rejected this approach in *Kawasaki Steel Corp. v. Middleton.* 699 S.W.2d 199 (Tex.1985) (per curiam).

In *Kawasaki Steel,* the trial court sustained the defendant's special appearance in part because the plaintiff failed to plead sufficient jurisdictional facts in the petition for service of process under the long-arm statute. Quoting at length from an article by Dean Frank Newton, the Supreme Court held that "[s]uch a narrow holding is inconsistent with the general rules of notice pleading. Indeed if the approach of the courts of appeals was applied to pleading generally, we would return to the thoroughly discounted English writ approach where a failure to dot an 'i' or cross a 't' was fatal." *Kawasaki Steel,* 699 S.W.2d at 203 (quoting W. Frank Newton, *Conflict of Laws,* 36 Sw. L.J. 397, 406 (1982)).

■ Therefore, we disavow our holding in *Lacefield* to the extent that it suggests the issues in a special appearance hearing are necessarily limited to the specific jurisdictional allegations in the plaintiff's petition.[3]

■ In so doing, we recognize that the doctrine of *stare decisis* requires us to proceed with caution. As now Chief Justice Jefferson of the Supreme Court recently observed:

> *Stare decisis* is, and should be, respected by any judge concerned with consistency and predictability in the law. Yet, prior precedent should be reconsidered when blind adherence to "settled" law binds the judiciary, and those who rely on its judgment, to doctrines that can no longer be justified in the current day and age.

Wallace Jefferson, *Stare Decisis,* 8 Tex. Rev. L. & Pol. 271, 275 (2004).

> [T]he doctrine of *stare decisis* does not stand as an insurmountable bar to overruling precedent. *Stare decisis* prevents change for the sake of change; it does not prevent any change at all. It creates a strong presumption in favor of the established law; it does not render that law immutable. Indeed, the genius of the common law rests in its ability to change, to recognize when a timeworn rule no longer serves the needs of society, and to modify the rule accordingly.

*Id.* at 274 (quoting *Gutierrez v. Collins,* 583 S.W.2d 312, 317 (Tex.1979)).

■ The doctrine of *stare decisis* must yield when a prior decision of this Court is plainly contrary to a holding of our Supreme Court. *Cf. Ratisseau v. Ratisseau,* 44 S.W.3d 695, 697 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd by agr.) ("We find the doctrine of *stare decisis* must yield to the clear pronouncements of the Legislature."). Although the particular phrase at issue in *Lacefield* is arguably *dicta,* we owe it to the bench and bar in general and to the litigants in particular to clarify our prior decisions when such ex-

---

sonal jurisdiction asserted *in the petition."* *Id.* at 762 (emphases added).

**3.** To challenge the adequacy of the jurisdictional allegations in the plaintiff's petition, the defendant should file a motion to quash the citation, which would constitute a general appearance. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 202–03 (Tex.1985) (per curiam).

cerpts play a central role in a party's argument and/or a trial court's ruling, as in this case. *Cf.* Jefferson, 8 Tex. Rev. L. & Pol. at 275.

Accordingly, a plaintiff may allege additional bases for personal jurisdiction in a written response to a defendant's special appearance or in some other pleading. In addition, a plaintiff may present evidence at the special appearance hearing of bases for personal jurisdiction not alleged in the pleadings. If the defendant does not object to the introduction of evidence pertaining to these unpleaded bases for jurisdiction, then the defendant bears the burden of negating the unpleaded bases as well. Thus, a nonresident defendant bears the burden of negating all bases of personal jurisdiction alleged in the plaintiff's pleadings or raised without objection by the evidence. *See* Louis S. Muldrow & Kendall M. Gray, *Treading the Mine Field: Suing and Defending Non–Residents in Texas State Courts,* 46 Baylor L.Rev. 581, 605–07 (1994).

## GLACIER GUIDES AND ROSEN-BRUCH NEGATED ALL RELEVANT BASES OF PERSONAL JURISDICTION ASSERTED BY ZIMMERMAN

Zimmerman identifies five contacts Glacier Guides and/or Rosenbruch have with Texas which he deems relevant to this inquiry: (1) they advertised in the 1997 "Convention Issue" of *Alaska Professional Hunter* magazine, which was distributed at two conventions in Texas; (2) Rosenbruch is included in the "Professional Member List" of the 1997 magazine and of the Spring 2001 edition with his address, telephone number, and fax number, and the 2001 magazine was distributed in Texas; (3) Glacier Guides and/or Rosenbruch arranged hunting or fishing expeditions for 13 Texans from 1995 to 2001; (4) Rosen-

bruch was served with process in Houston at a meeting of the Houston Safari Club in March 2002; and (5) Rosenbruch mailed Zimmerman a letter and called him twice about the planned expedition.

Counsel for Glacier Guides and Rosenbruch did not object to Zimmerman's presentation of evidence relevant to these alleged contacts. Thus, we consider these alleged contacts as potential bases for personal jurisdiction. *See Temperature Sys., Inc. v. Bill Pepper, Inc.,* 854 S.W.2d 669, 673–74 (Tex.App.-Dallas 1993, writ dism'd by agr.).

Zimmerman contends that these contacts give rise to specific jurisdiction, which exists when (1) a nonresident defendant has purposeful contacts with the forum state and (2) the plaintiff's cause of action arises from or relates to those contacts. *Am. Type Culture Collection,* 83 S.W.3d at 806. The requirement of "purposeful" contacts "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Am. Type Culture Collection,* 83 S.W.3d at 806.

Zimmerman relies primarily on Glacier Guides's and Rosenbruch's advertisement in the 1997 magazine which was distributed in several states including Texas as evidence that Glacier Guides had purposeful contacts with Texas. Zimmerman also points to Rosenbruch's listing in the 1997 magazine and the Spring 2001 magazine. However, advertising in a nationally circulated publication does not by itself constitute a purposeful contact with any particular state in which the magazine may be distributed. *See CMMC v. Salinas,* 929 S.W.2d 435, 439 (Tex.1996); *Hayes v. Wissel,* 882 S.W.2d 97, 97–99

(Tex.App.-Fort Worth 1994, no writ); *C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791, 792–94 (Tex.App.-Fort Worth 1984, no writ).

■ Zimmerman also relies on Rosenbruch's statement that Glacier Guides arranged hunting or fishing expeditions for thirteen Texas residents between 1995 and 2001. However, Glacier Guides's dealings with others are not relevant to the issue of specific jurisdiction. *See Yfantis v. Balloun*, 115 S.W.3d 175, 182–83 (Tex.App.-Fort Worth 2003, no pet.); *Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 838 (Tex. App.-Houston [1st Dist.] 2002, pet. denied).

■ The letter Rosenbruch mailed to Zimmerman and the two phone calls he placed likewise do not constitute purposeful contacts with Texas sufficient to give rise to specific jurisdiction because they were in response to Zimmerman's inquiry and not to solicit his business. *See Laykin v. McFall*, 830 S.W.2d 266, 268–70 (Tex. App.-Amarillo 1992, orig. proceeding).

■ Finally, Rosenbruch's presence in Texas after Zimmerman filed suit is irrelevant to the issue of whether Glacier Guides or he had purposeful contacts with Texas relative to Zimmerman's booking of a hunting expedition with Glacier Guides. *See Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 126 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.); *accord Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n. 1 (5th Cir.1990).

Accordingly, we cannot say that the court's decision "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Haskett v. Butts*, 83 S.W.3d 213, 218 (Tex.App.-Waco 2002, pet. denied). Thus, we overrule Zimmerman's sole issue.

The judgment is affirmed.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

Rodger Zimmerman sued Glacier Guides, Inc., an Alaskan corporation, and Jimmie Rosenbruch, the president of Glacier Guides, individually, for a refund of almost $20,000 Zimmerman paid to Glacier Guides for a hunt that never took place.[1] Glacier Guides and Rosenbruch filed a special appearance. After a hearing, the trial court sustained the special appearance and dismissed the case with prejudice.

The following jurisdictional acts [2] alleged by Zimmerman present the best case scenario for his assertion of jurisdiction over Glacier Guides and Rosenbruch:

1. Zimmerman picked up an issue of The Alaskan Professional Hunter in 1997 at a Safari Club Meeting in either Dallas or Houston.

2. In it, he saw what appeared to Zimmerman to be an advertisement for Glacier Guides.

3. Four years later, in 2001, Zimmerman saw Rosenbruch at a convention in Nevada, and while in Nevada, scheduled a hunt and made a down payment of $12,000 toward the total cost of the hunt.

4. Thirty days before the scheduled hunt, Zimmerman received a call from Rosenbruch asking for the re-

---

1. The ability to make it to the hunt was prevented by the no flight restrictions after September 11, 2001.

2. I pause to briefly note that the term "facts" is used by some courts but the Texas Supreme Court in *Siskind* uses the term "acts" when discussing jurisdictional allegations. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437–38 (Tex.1982). I use the term "act" here because it is more precise than the term "fact."

maining balance of approximately $7,000 for which Zimmerman had already written a check and placed in the mail.

5. Zimmerman attended at least twenty conventions in Texas and never saw Rosenbruch at one of those Texas conventions until Rosenbruch was served with this lawsuit at a Houston convention in 2001.

Zimmerman does not allege that The Alaskan Professional Hunter was available for subscription or that he had ever received it by subscription. He does not contend that Texas has general jurisdiction over Glacier Guides and Rosenbruch but contends, instead, that specific jurisdiction exists.

Applying this best case scenario to the law established by the United States Supreme Court and the Texas Supreme Court, Texas cannot exercise specific jurisdiction over Glacier Guides or Rosenbruch. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795–797 (Tex.2002). Thus, the trial court did not err in sustaining Glacier Guides' and Rosenbruch's special appearance and dismissing the case with prejudice.

RESPONSE TO NEW OPINION[3]

The Court takes the long way around *Lacefield. Lacefield v. Elec. Fin. Group,* 35 S.W.3d 755 (Tex.App.-Waco 2000, no pet.). First, I disagree that it says what they now try to make it say. But if that is what it says, it was wrongly decided and should be overruled. *See Vega v. State,* 84 S.W.3d 613, 625–29 (Tex.Crim.App.2002) (Keller, P.J., dissenting); *State v. Toney,* 979 S.W.2d 642, 645–48 (Tex.Crim.App.

1998) (Keller, J., concurring). The entire discussion of stare decisis is not on point because there is no new authority from a higher court or the legislature after *Lacefield* that causes us to change the result. It was just wrong if we limited the source of the "allegations" to the petition.

Finally, the Court's discussion of, and reliance on, *Kawasaki Steel* is misplaced. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199 (Tex.1985). *Kawasaki Steel* is about jurisdictional allegations in the context of service of process under the long arm statute. It is not about jurisdiction under Rule 120a.

Thus, I concur only in the result reached by the Court.

---

**3.** On July 7, 2004, the Court issued an opinion to which I concurred. It was withdrawn

on September 1, 2004.