Opinion issued August 30, 2007








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01010-CV






TABOR, CHHABRA & GIBBS, P.A. AND DARRYL GIBBS, Appellants


V.


MEDICAL LEGAL EVALUATIONS, INC. AND BRUCE L. HALBRIDGE,
M.D., Appellees






On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 2006-07498






O P I N I O N

 Appellants, Tabor, Chhabra & Gibbs, P.A. ("TCG") and Darryl Gibbs
("Gibbs"), filed this interlocutory appeal challenging the trial court's denial of their
special appearance. In four issues, TCG and Gibbs contend that the trial court erred
in denying their special appearance because (1) there is legally and factually
insufficient evidence to support some of the trial court's findings of fact, (2) several
of the trial court's conclusions of law are erroneous, and (3) neither TCG's nor
Gibbs's contact with the state of Texas gives rise to specific or general jurisdiction. (1) 
We reverse the order denying appellants' special appearance and remand with
instructions to dismiss Tabor, Chhabra & Gibbs, P.A. and Darryl Gibbs for lack of
personal jurisdiction. 

I. Background

A. The Parties and Their Relationships

 TCG is a Mississippi law firm without any offices, employees, clients, bank
accounts, or property in Texas. Gibbs is an attorney and partner at TCG, who is
licensed to practice law only in Mississippi. Like TCG, Gibbs has no offices,
employees, clients, bank accounts, or property in Texas. 

 In 2002, TCG and Gibbs sought the services of The TASA Group, Inc.
("TASA"), a Pennsylvania-based referral company, in finding a medical expert to
testify in the area of obstetrics and gynecology in a matter pending in a Mississippi
state court. (2) The terms of the relationship between TASA and TCG were outlined
in a Memorandum of Confirmation (the "Memorandum") addressed to Gibbs from
a TASA representative. 

 The "Terms" of the Memorandum state the rate that TCG would pay for expert
services and that the payment of the testifying expert's fees was to be through
TASA--that is, all bills were to be payable directly to TASA upon presentment. The
Terms also state that the parties both agree to the exclusive concurrent jurisdiction
and venue of the Montgomery County Court of Common Pleas of the Commonwealth
of Pennsylvania and the U.S. District Court of the Eastern District of Pennsylvania
for the resolution of "any disputes arising under this Memorandum" and that
Pennsylvania law will govern the construction of the Memorandum. The
Memorandum does not make any reference whatsoever to the State of Texas or Texas
law. Finally, the Memorandum provides the following warning: 

[TASA] is not responsible for qualifying the Expert you use. It is your
responsibility to review the Expert's qualifications directly with the
Expert, including any resume, background, personal information, and
vital statistics, so that you are certain that the Expert is qualified and
credible in all respects and available for all of your needs . . . . In
determining whether to use the Expert, you will rely solely and
exclusively on your own investigation and judgment whether the Expert
is qualified and credible. 


Pursuant to this Memorandum, TASA referred appellees, Bruce Halbridge, M.D. and
Medical Legal Evaluations, Inc. (collectively "Halbridge), to TCG and Gibbs. 
Halbridge had previously served as a medical consultant for TCG in another lawsuit.
According to the Memorandum, Halbridge was asked by TASA to make the initial
contact with TCG. 

 Halbridge is a doctor licensed to practice medicine in Texas and in New York. 
He also serves as president of Medical Legal Evaluations, Inc. , a corporation located
and incorporated in Texas that provides litigation consulting services in the area of
medical malpractice. Halbridge's Agreement with TASA provided that his services
were for TASA's client, not TASA. All work accomplished on behalf of a TASA
client was to be billed through TASA. Halbridge was to send TASA the bill for his
services, and TASA would pay Halbridge his share. The Agreement, which was
governed by the laws of the Commonwealth of Pennsylvania, provided that
"responsibility for payment rests with TASA's client, and not with TASA."

 TCG and Gibbs accepted TASA's recommendation, and, over the course of the
next three years, Halbridge, TCG, and Gibbs prepared for trial in Mississippi. During
this period of time, TCG and Gibbs corresponded with Halbridge in his Texas office. 
According to Halbridge, all of his preparatory work for the Mississippi trial was done
in Texas. Specifically, he testified by affidavit that, at his Houston office, he received
medical records for his review and analysis. He also prepared his expert report from
his Houston office and corresponded with attorneys from TCG by telephone. The
only time Halbridge spent in Mississippi was the time he spent testifying at trial, a
period of approximately two days. 

 According to TCG and Gibbs, Halbridge's testimony at trial went poorly. It
was discovered on cross-examination that he had previously testified as an expert in
areas in which he was not board certified. Gibbs sent a letter to TASA, in
Pennsylvania, expressing his dissatisfaction with Halbridge's testimony. The letter
stated, in relevant part, as follows: 

It was my understanding after reading your mail out material and
visiting your website that TASA prides itself as being the best of the
best expert witness locator [sic] for attorneys anywhere. 


With that said, I would assume most attorneys do not feel the need to do
a background search of experts they hire through TASA assuming
TASA would do their homework for us. We also assume this since
TASA charges such a heavy fee for locating these experts. I want you
to know Dr. Halbridge has a checkered past and in fact he admitted on
the witness stand that he lists himself on the internet with over a dozen
expert providers. I want to draw your attention to ALM Experts so that
you know that Dr. Halbridge also holds himself out as a hair analysis
expert. Please be advised that Dr. Halbridge is an OBGYN yet still
holds himself out on the Internet as a hair analysis expert. Please be
advised that this was brought up at trial, a trial that we lost due to the
lack of credibility of Dr. Halbridge. 


Dr. Halbridge also testified that he has provided expert opinions in the
past based on a breach of the standard of care for pulmonologists,
internal medicine doctors, and emergency room physicians among
others. This man will provide an expert opinion outside of his specialty
at a moment's notice. I enclosed a copy of Dr. Halbridge's online
petition for a Russian bride just so you can understand what we are
dealing with. At this time, I am requesting a full refund of the experts
fees I paid in regard to Felicia Wells's file. I know a lot of attorneys that
practice medical negligence and I am a member of the Mississippi Trial
Lawyers Association and American Trial Lawyers Association. I want
TASA to right this wrong and refund the expert fees I paid in regard to
the Felicia Wells' case. 


Pursuant to this letter, TASA refunded the fees paid by TCG and Gibbs and did not
tender payment to Halbridge for his services. 

B. The Lawsuit

 Halbridge sued TCG and Gibbs alleging causes of action for contract claims
for breach of contract and quantum meruit and tort claims for civil theft, defamation
and business disparagement, and tortious interference with existing and prospective
contractual relationships. (3) TCG and Gibbs responded by filing a motion to dismiss
for lack of jurisdiction, which was treated as a special appearance by the trial court. 
In their special appearance, TCG and Gibbs alleged that they did not have sufficient
minimum contacts with the state of Texas to support the exercise of personal
jurisdiction. After a hearing on the motion, during which Rogen Chhabra and Darryl
Gibbs testified pro se, the trial court denied TCG's and Gibbs's special appearance. 
In so doing, the trial court made the following findings of fact:

1. Plaintiff Medical Legal Evaluations, Inc. ("MLE") is a Texas
Corporation.


2. Plaintiff Bruce L. Halbridge, M.D. ("Halbridge") is an
obstetrician/gynecologist residing and practicing in Houston,
Texas.


3. Defendant Tabor, Chhabra & Gibbs, P.A. ("TCG") is a
Mississippi professional association of lawyers.


4. Defendant Darryl Gibbs ("Gibbs") is a lawyer residing and
practicing in Mississippi.


5. The TASA Group, Inc. ("TASA") is a Pennsylvania corporation.


6. On or about Fall 2002, TCG contracted with TASA (the "TCG
Contract") to find an expert witness for TCG's client in a
Mississippi lawsuit ("the Engagement").


7. TASA contracted with MLE and Halbridge" [sic] to perform the
Engagement (the "TASA Contract").


8. After entering into the TASA Contract, TASA had no more duties
under the TCG Contract except billings and collections.


9. After the TASA Contract was entered into, all Engagement
activities were directed by TCG and Gibbs. These activities
included assigning duties to Halbridge in Texas and Mississipi,
sending letters and other materials to Halbridge in Texas, and
scheduling Halbridge's Engagement activities in Texas and
Mississippi, including his court appearance.


10. Most of Halbridge's Engagement activities were performed in
Texas.


11. Following the Engagement, Gibbs and TCG were dissatisfied
with MLE and Halbridge's performance. Apparently, the trial did
not go well. 


12. Gibbs and TCG sent a letter to TACA [sic] that MLE and
Halbridge allege was defamatory and damaging to its/his
professional reputation in Texas.


13. Gibbs and TCG did not pay TACA [sic] for the Engagement
activities of MLE and Halbridge.


14. At the time of the Engagement, TACA [sic] advertised in Texas
and used Texas telephone numbers, among others.


15. Any conclusion of law which also constitutes a finding of fact is
adopted as finding of fact. 


In addition, the trial court issued the following conclusions of law.


1. Any finding of fact which also constitutes a conclusion of law is
adopted as a conclusion of law.


2. Defendants' Special Appearance was not sworn and is ineffectual
as a matter of law to challenge this Court's jurisdiction. 
Defendants subsequently cured this defect by way of an Amended
Special Appearance.


3. There is a substantial connection between TCG, Gibbs and the
State of Texas arising from the Engagement.


4. The causes of action alleged herein arise from and relate to the
Engagement.


5. Plaintiffs, Texas residents, are third party beneficiaries of the
TCG Contract.


6. TCG and Gibbs recruited MLE and Halbridge, Texas residents,
through the intermediary TACA [sic], for the Engagement.


7. There was some evidence adduced at the hearing that TACA [sic]
is also located in Texas.


8. All factual disputes in the record of the Special Appearance
hearing were resolved in favor of this Court's Order Denying the
Special Appearance.


9. TCG and Gibbs purposefully availed themselves of the privilege
of conducting activities in Texas such that they could reasonably
anticipate being called into a Texas court.


10. The assumption of jurisdiction by this Court does not offend
traditional notions of fair play and substantial justice, considering
the burden on TCG and Gibbs, the interests of Texas in
adjudicating the dispute, MLE and Halbridge's interest in
obtaining convenient and effective relief, the interstate judicial
system's interest in achieving the most efficient resolution of
controversies, and the shared interest of the several states in
furthering fundamental substantive social policies. 


11. This Court has specific jurisdiction over the Defendants. 

 

II. Special Appearance

 In their third issue, TCG and Gibbs argue that the trial court erred in denying
their special appearance because their contacts with the state of Texas do not give rise
to specific jurisdiction. We agree.

A. Standard of Review

 The plaintiff bears the initial burden of pleading allegations sufficient to bring
a nonresident defendant within the personal jurisdiction of a Texas court. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002); Glattly v. CMS
Viron Corp., 177 S.W.3d 438, 445-46 (Tex. App.--Houston [1st Dist.] 2005, no
pet.). Upon filing a special appearance, however, the nonresident defendant assumes
the burden of negating all the bases of personal jurisdiction alleged by the plaintiff. 
Marchand, 83 S.W.3d at 793. The existence of personal jurisdiction is a question of
law, reviewed de novo, but that determination must sometimes be preceded by the
resolution of underlying factual disputes. Preussag Aktiengesellschaft v. Coleman,
16 S.W.3d 110, 113 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). 
When, as here, the trial court issues findings of fact and conclusions of law, we may
review the findings of fact on legal and factual sufficiency grounds and review the
conclusions of law de novo as a legal question. Silbaugh v. Ramirez, 126 S.W.3d 88,
94 (Tex. App.--Houston [1st Dist.] 2002, no pet.). If there is more than a scintilla
of evidence to support a factual finding, the legal sufficiency challenge fails. Shell
Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc., 84 S.W.3d 830, 836
(Tex. App.--Houston [1st Dist.] 2002, pet. denied). A ruling will be reversed for
factual insufficiency only if it is so against the great weight and preponderance of the
evidence as to be manifestly erroneous or unjust. Id. 

 Although we may not review the conclusions of law for factual insufficiency,
we may review the trial court's legal conclusions drawn from the facts to determine
their correctness. Silbaugh, 126 S.W.3d at 94. If a conclusion of law is erroneous,
but the proper judgment was rendered, the erroneous conclusion of law does not
require reversal. BMC Software, 83 S.W.3d at 794.

B. Requirements of Personal Jurisdiction

 Texas courts may assert personal jurisdiction over a nonresident defendant only
if the Texas long-arm statute (4) authorizes jurisdiction and the exercise of jurisdiction
is consistent with federal and state guarantees of due process. Tri-State Bldg.
Specialties, Inc. v. NCI Bldg. Sys., L.P., 184 S.W.3d 242, 248 (Tex. App.--Houston
[1st Dist.] 2005, no pet.) (citing BMC Software, 83 S.W.3d at 795). The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process
will allow." Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991). Thus, the Texas long-arm statute requirements are
satisfied if exercising personal jurisdiction comports with federal due process
limitations. Id. We rely on precedent from the United States Supreme Court as well
as our own state's supreme court in determining whether a nonresident defendant has
met its burden to negate all bases of jurisdiction. BMC Software, 83 S.W.3d at 795.

 Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is
proper if a nonresident defendant established "minimum contacts" with Texas and
maintenance of the suit would not offend "traditional notions of fair play and
substantial justice." (5) Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 66 S. Ct. 154, 158
(1945). The minimum-contacts analysis requires that the defendant "purposefully
avail" itself of the privilege of conducting activities within Texas, thus invoking the
benefits and protections of our laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462,
475, 105 S. Ct. 2174, 2183 (1985). Purposeful availment is the "touchstone of
jurisdictional due process": "some act by which the defendant purposefully avails
itself of the privilege of conducting activities within the forum State, thus invoking
the benefits and protections of its laws." Michiana Easy Livin' Country, Inc. v.
Holten, 168 S.W.3d 777, 784 (Tex. 2005) (quoting Hanson v. Denckla, 357 U.S. 235,
253, 78 S. Ct. 1228 (1958)). Purposeful availment has at least three aspects. Id. at
785. First, only the defendant's forum-state contacts matter, not anyone else's. Id. 
Second, the contacts must be purposeful, not merely random, isolated, or fortuitous. 
Id. Third, a nonresident defendant must seek some benefit, advantage, or profit by
"availing" itself of the jurisdiction, thus impliedly consenting to its laws. Id. A
defendant's activities, whether they consist of direct acts within Texas or conduct
outside of Texas, must justify a conclusion that the defendant could reasonably
anticipate being called into a Texas court. World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980). A defendant cannot be
haled into a Texas court based on the unilateral acts of a third party. Michiana Easy
Livin' Country, Inc.168 S.W.3d at 784-85. Likewise, if a defendant's Texas contacts
are random, fortuitous, or attenuated, a defendant is not subject to jurisdiction here. 
Id. It is the quality and nature of the defendant's contacts, rather than their number,
that are important to our analysis. See IRA Resources, Inc. v. Greigo, 221 S.W.3d.
592, 597 (Tex. 2007). A defendant may purposefully avoid a particular forum by
structuring its transaction in such a way as to neither profit from nor avail itself of the
benefits of the forum state's laws. See Moki Mac River Expeditions v. Drugg, 221
S.W.3d 569, 575 (Tex. 2007). 

 A defendant's contacts with a forum can give rise to either general or specific
jurisdiction. CSR Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996). Specific
jurisdiction is established if the defendant's liability arises from, or is related to, an
activity conducted within the forum. Id. When specific jurisdiction is asserted, the
minimum contacts analysis focuses on the relationship among the defendant, the
forum, and the litigation. Blair Communications, Inc. v. SES Survey Equip. Servs.,
Inc., 80 S.W.3d 723, 727 (Tex. App.--Houston [1st Dist.] 2002, no pet.). For a
nonresident's forum contacts to support the exercise of specific jurisdiction, the
contacts must be purposely directed at or take place within the forum and there must
be a "substantial connection" between those contacts and the operative facts of the
litigation. See Moki Mac River Expeditions, 221 S.W.3d at 585. The focus of the
inquiry must be the nature of the contacts and the "nexus" these contacts create with
the forum state. See McDermott v. Cronin, 31 S.W.3d 617, 621-22 (Tex.
App.--Houston [1st Dist.] 2000, no pet.).

C. Jurisdictional Analysis

 For a Texas forum to properly exercise specific jurisdiction in this
case, (1) TCG and Gibbs must have made minimum contacts with Texas by
purposefully availing themselves of the privilege of conducting activities here and (2)
TCG's and Gibbs's liability must have arisen from or be related to those contacts. 
See Moki Mac River Expeditions, 221 S.W.3d at 576. Merely contracting with a
Texas citizen does not, by itself, satisfy these requirements. Trigeant Holdings, Ltd.
v. Jones, 183 S.W.3d 717, 725 (Tex. App.--Houston [1st Dist.] 2005, pet. denied). 

 Halbridge asserts that TCG and Gibbs established sufficient minimum contacts 
by (1) contracting with a Texas resident when either party is to perform the contract
in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and
(3) recruiting Texas residents for employment inside or outside of Texas. Tex. Civ.
Prac. & Rem. Code Ann. § 17.042. TCG and Gibbs argue that the trial court lacks
specific jurisdiction over them because they met their burden of negating each of the
potential jurisdictional bases. We address each jurisdictional basis individually. 

 1. Contracting with a Texas Resident

 TCG and Gibbs initially argue that the trial court lacked specific jurisdiction
because (1) no contract with Halbridge exists and (2), even if a contract did exist, a
single contract is not sufficient to establish specific jurisdiction. Halbridge concedes
that there was no written contract between himself and TCG and Gibbs. Nevertheless
Halbridge argues that he was a third-party beneficiary to the contract between TCG,
Gibbs, and TASA and the parties' continuing obligations to one another under the
Memorandum are sufficient minimum contacts to establish that TCG and Gibbs
"purposefully availed" themselves of the privilege of conducting activities within
Texas and that there was a substantial connection between the contract and the
operative facts of this litigation. We disagree.

 a. Third-Party Beneficiary

 In determining whether a third party has the right to enforce a contract, courts
look to the express intent of the contracting parties. MCI Telecomms. Corp. v. Tex.
Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999). There is a presumption against
the existence of third party beneficiary contracts. See id. A court should not imply
or create third-party-beneficiary rights unless they are expressly intended by the
contracting parties and plainly and fully spelled out in the four corners of the contract. 
EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist., 176 S.W.3d 330, 340
(Tex. App.--Houston [1st Dist.] 2004, pet. dism'd). Thus, courts should presume
that an agreement confers no third-party-enforcement rights unless it "clearly
appears" that the contract intends a third party to benefit, to the point of suing upon
the contract. MCI Telecomms., 995 S.W.2d at 651. Accordingly, a contract does not
confer third-party-beneficiary rights unless: (1) the contract plainly expresses the
third-party obligation of the bargain-giver, (2) it is unmistakable that a benefit to the
third party is within the contemplation of the primary contracting parties, and (3) the
primary parties contemplate that the third party would be vested with the right to sue
for enforcement of the contract. EPGT Tex. Pipeline, 176 S.W.3d at 340. The fact
that a third party receives incidental benefits from a contract does not establish a right
of action to enforce the contract. MCI Telecomms., 995 S.W.2d at 650. 

 Even if Halbridge could prove that he was a third-party beneficiary of the
agreement between TASA and TCG and Gibbs, the agreement here does not subject
TCG and Gibbs to jurisdiction in Texas because it is between TASA, a Pennsylvania
resident, and TCG and Gibbs, who are both from Mississippi. Moreover, nothing in
the agreement directs or requires performance in Texas. See Burger King, 471 U.S.
at 488, 105 S. Ct. at 2192. Thus, an allegation of third-party beneficiary status
relating to this contract is insufficient to confer jurisdiction by a Texas court. Rather,
Halbridge was required to establish a "substantial connection" between the
agreement and the state of Texas sufficient to warrant the exercise of specific
jurisdiction and satisfy federal constitutional due process requirements. See Moki
Mac River Expeditions, 221 S.W.3d at 585. As explained below, Halbridge did not
make this showing. 

 b. Parties' Continuing Obligations 

 Halbridge argues that there is a substantial connection between the contract and
the State of Texas and the parties' "continuing obligations" to one another as a result
of the Memorandum are sufficient minimum contacts to establish that TCG and Gibbs
"purposefully availed" themselves of the privilege of conducting activities within
Texas. Despite the language of the Memorandum, to which he claims to be a third-party beneficiary, stating that all disputes concerning the Memorandum are to be
resolved in Pennsylvania courts and according to Pennsylvania law, Halbridge argues
that (1) his preparatory work completed in his Houston office and (2) the
correspondence between TCG and Gibbs and Halbridge in Texas are sufficient to
warrant the exercise of specific jurisdiction in this case. We disagree. 

 The decision to prepare for the Mississippi trial in Texas was Halbridge's
unilateral decision, and there is no language in the Memorandum requiring that
Halbridge perform any work in Texas. There is no evidence in the record that either
TCG or Gibbs requested that Halbridge review and analyze relevant medical records
in Texas, nor is there any indication that TCG or Gibbs requested that Halbridge
prepare his expert report in Texas. TCG's and Gibbs's correspondence with
Halbridge, in his Texas office, stemmed from Halbridge's decision. A nonresident
defendant, however, may not be haled into a Texas court based on the unilateral acts
of a third party. Michiana, 168 S.W.3d at 784-85. Furthermore, even had there been
a contract, 

an exchange of communications in the course of developing and
carrying out a contract does not, by itself, constitute the required
purposeful availment of the benefits and protections of Texas law. 
Otherwise, jurisdiction could be exercised based only on the fortuity that
one of the parties happens to reside in the forum state.

Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007) (citations
omitted). 

 For these reasons, we hold that TCG and Gibbs did not contract with a Texas
resident when either party was to perform the contract in whole or in part in Texas,
and the exercise of specific jurisdiction based on the Memorandum's existence and
Halbridge's allegations of defendants' conduct regarding the Memorandum would not
comport with federal constitutional due process requirements. See Tex. Civ. Prac.
& Rem. Code Ann. § 17.042(1). 

 2. Committing a Tort in Texas

 TCG and Gibbs next argue that the trial court lacked specific jurisdiction
because there is an insufficient nexus between their alleged conduct in the
commission of the torts of defamation and business disparagement, tortious
interference, or civil theft and the state of Texas. We address each of these causes of
action in turn. 

 a. Defamation and Business Disparagement

 Halbridge's pleadings allege that Gibbs's letter to TASA, demanding a refund
of the fees paid to TASA for Halbridge's services, contained defamatory statements. 
Specifically, Halbridge alleged that, 

TASA declined to send MLE the amount forwarded to it by [TCG] for
transmission to MLE following the [ ] trial because Gibbs stated to
TASA that Halbridge's testimony was ridiculous. This statement was
false, it was made intentionally and maliciously, and with specific intent
to harm Halbridge. Gibbs and [TCG] knew at the time the statement
was made that Halbridge was licensed to practice medicine in Texas,
and further they knew that Halbridge maintained an active medical and
consulting practice in Texas. 


 "The tort of libel is generally held to occur wherever the offending material is
circulated." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777, 104 S. Ct. 1473,
1479 (1984); see De Prins v. Van Damme, 953 S.W.2d 7, 14 (Tex. App.--Tyler 1997,
writ denied) ("[T]ort of slander occurs in the state in which it is heard, i.e., published
or circulated."). Here, the letter, written by Gibbs in Mississippi, was sent to TASA
in Pennsylvania. The letter was never circulated in Texas. 

 Nevertheless, relying on Supreme Court authority in Calder v. Jones, Halbridge
argues that, because the reputational injury stemming from Gibbs's statement was
suffered in Texas, the exercise of specific jurisdiction over this action in Texas is
warranted. 465 U.S. 783, 104 S. Ct. 1482 (1984). His reliance on Calder in support
of this argument is misplaced. In Calder, respondent, a professional entertainer who
lived and worked in California and whose television career was centered there,
brought suit in a California court, alleging that she had been libeled in an article
written and edited by petitioners in Florida and published in the National Enquirer,
a national magazine having its largest circulation in California. Id. at 784-85, 104
S. Ct. at 1484-85. In holding that the Florida petitioners were subject to the personal
jurisdiction of the California court, the United States Supreme Court noted that, [t]he allegedly libelous story concerned the California activities of a
California resident. It impugned the professionalism of an entertainer
whose television career was centered in California. The article was
drawn from California sources, and the brunt of the harm, in terms of
both respondent's emotional distress and the injury to her professional
reputation, was suffered in California. In sum, California is the focal
point both of the story and of the harm suffered. 


Id. at 788-89, 104 S. Ct. at 1486. The Texas Supreme Court has warned that, in
applying Calder, we should be mindful of shifting our focus from "'the relationship
among the defendant, the forum, and the litigation' to the relationship among the
'plaintiff, the forum . . . and the litigation.'" See Michiana, 168 S.W.3d at 790. "The
important factor was the extent of the defendant's activities, not merely the residence
of the victim." Id. at 789. 

 The facts of the instant case are distinguishable from those in Calder. In this
case, unlike in Calder, the state in which specific jurisdiction is sought is not the focal
point of the alleged unlawful statements. Here, the allegedly libelous letter concerned
Halbridge's statements in a Mississippi court, not in Texas. This letter was sent only
to a TASA representative in Pennsylvania. It was not sent to Texas. While his
medical practice and consulting business is centered in Texas, Halbridge does testify
in matters pending outside of Texas, as is evident from his testimony in Mississippi
for TCG and Gibbs and his registry with national expert-referral companies. While
some of Halbridge's alleged reputational injury may be suffered in Texas, Texas is
not the focus of the allegedly defamatory statement. Thus, there is not a substantial
connection between the defendants' alleged conduct and the state of Texas sufficient
to warrant the exercise of specific jurisdiction. See Moki Mac River Expeditions, 221
S.W.3d at 575. The mere fact that it was foreseeable that an alleged libelous letter
would have some effect in Texas is not a sufficient basis for an assertion of
jurisdiction over a nonresident defendant. See De Prins, 953 S.W.2d at 14. The
record contains no evidence of any marketing efforts directed to Texas by TCG and
Gibbs in connection with the use of Halbridge's services of the type that creates a
nexus with the state of Texas sufficient to warrant the exercise of specific
jurisdiction. See Moki Mac River Expeditions, 221 S.W.3d at 577 (no specific
jurisdiction where, among other things, the out-of-state defendant solicited Texas
residents through mass mailings and targeted direct-marketing e-mail campaigns). 
Accordingly, we hold that the exercise of specific jurisdiction based on defendants'
letter to TASA would not comport with federal constitutional due process
requirements under the facts of this case.

 b. Tortious Interference 

 We next address Halbridge's tortious interference claim, in which he alleges
that TCG and Gibbs "willfully and intentionally interfered with [his contract with
TASA] by defaming [him] with the intent to encourage TASA to withhold funds due
to MLE." To establish liability for interference with a prospective contractual or
business relation, Halbridge must prove that he was harmed by conduct on the part
of TCG and Gibbs, which was either independently tortious or unlawful. Wal-Mart
Stores, Inc. v. Sturges, 52 S.W.3d 711, 713 (Tex. 2001). Conduct that would violate
some other recognized tort or duty is "independently tortious." Id. Similarly, the
elements of tortious interference with an existing contract claim include an act of
willful or intentional interference. Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.,
29 S.W.3d 74, 77 (Tex. 2000). Here, Halbridge has pleaded Gibbs's allegedly
defamatory statement as the "independently tortious" or willful and intentional act of
interference. The tort of defamation thus underlies Halbridge's tortious interference
claims. Because we have concluded that Halbridge's allegations concerning the
alleged defamation are insufficient to warrant the exercise of specific jurisdiction, we
also conclude that the same allegations, which also support Halbridge's claim for
tortious interference with existing and prospective contractual relations, are
insufficient to support the exercise of specific jurisdiction in this case. 

 c. Civil Theft

 We next address Halbridge's civil theft of services claim under chapter 134 of
the Texas Civil Practices and Remedies Code. See Tex. Civ. Prac. & Rem. Code
Ann. § 134.001-.005 (Vernon 2005). The entirety of Halbridge's pleadings on civil
theft state that he "incorporates each of the foregoing factual allegations herein as if
fully set forth. [TCG and Gibbs] have violated the Texas Theft Liability Act. As a
result of their acts constituting theft of service, [Halbridge] has been damaged in an
amount which exceeds the minimum jurisdictional limits of the Court. [Halbridge]
seeks recovery of its actual damages, and reasonable and necessary attorney's fees as
provided for in the Act." Halbridge points to no new or additional contacts with the
state of Texas to support his civil theft cause of action. As we have previously
determined, the exercise of specific jurisdiction based on the allegations of the 
parties' "continuing obligations" to one another as a result of the Memorandum
contacts and factual allegations in Halbridge's breach of contract, defamation, and
tortious interference claims would not comport with federal constitutional due
process requirements. These same facts likewise cannot support the exercise of
specific jurisdiction under Halbridge's civil theft claims. See Tex. Civ. Prac. &
Rem. Code Ann. § 17.042(2).




 3. Recruiting Texas Residents for Employment (6)

 TCG and Gibbs finally argue that the trial court lacked specific jurisdiction
because TASA, the intermediary through which Halbridge alleges TCG and Gibbs
recruited him, is not located in the state of Texas. Specifically, TCG and Gibbs argue
that the third subsection of the long-arm statute--providing that a nonresident
defendant "does business" in Texas if it "recruits Texas residents, directly or through
an intermediary located in this state, for employment inside or outside of this
state"--requires that the intermediary have a physical presence in Texas. See Tex.
Civ. Prac. & Rem. Code Ann. § 17.042(3). In response, Halbridge argues that,
because TASA maintained a local Texas telephone number and advertised in Texas
publications, it was amenable to jurisdiction in Texas and, thus, is "located" in Texas
for purposes of the long-arm statute. (7) 

 As both parties note, the term "located" is undefined by statute, and we have
found no case law providing a definition. Assuming, without deciding, that TASA
is "located" in Texas for purposes of the long-arm statute, the issue whether TCG and
Gibbs recruited Halbridge remains. In BHP de Venezuela, C.A. v. Casteig, the
Corpus Christi Court of Appeals considered whether a Venezuelan corporation's
contacts were sufficient to confer specific jurisdiction where the Texas plaintiff
alleged that, pursuant to an agreement between the foreign corporation and his Texas-based employer, he had been recruited to perform consulting services for the
corporation in Venezuela. 994 S.W.2d 321, 328 (Tex. App.--Corpus Christi 1999,
pet. denied). The Corpus Christi court held that the Venezuelan corporation had not
recruited the Texas plaintiff for employment because the agreement between the
foreign corporation and the plaintiff's Texas-based employer contained no language
indicative of recruiting, and the Texas resident unilaterally sought the employment
of his Texas-based employer. Id. 

 Here, while Halbridge had consulted with TCG on a prior medical malpractice
case, there is nothing in the record which suggests that either TCG or Gibbs had any
involvement in selecting Halbridge as the TASA-recommended expert witness in the
present dispute. Rather, the Memorandum from TASA to TCG and Gibbs indicates
that TASA asked Halbridge to make the initial contact. There is no other language
in the Memorandum that is indicative of any recruiting on the part of TCG or Gibbs. 
For this reason, we conclude that TCG and Gibbs did not recruit Halbridge for
employment inside or outside of this state, and the exercise of specific jurisdiction
based on the allegations of recruitment would not comport with federal constitutional
due process requirements. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042(3); see
also Casteig, 994 S.W.2d at 328. 

 For the reasons stated above, TCG and Gibbs are not subject to the exercise of
personal jurisdiction by the trial court, and we hold that the trial court erred in making
the legal conclusion that it had specific jurisdiction over them. See Tex. Civ. Prac.
& Rem. Code Ann. § 17.042; Tri-State, 184 S.W.3d at 248. 

 Accordingly, we sustain TCG's and Gibbs's third issue. Because our holding
that the trial court lacks specific jurisdiction is dispositive of this interlocutory appeal,
we do not reach TCG's or Gibbs's first or second issues. 




III. Conclusion

 We reverse the order denying appellants' special appearance and remand with 

instructions to dismiss Tabor, Chhabra & Gibbs, P.A. and Darryl Gibbs for lack of
personal jurisdiction. 


 George C. Hanks, Jr.

 Justice

 

Panel consists of Justices Nuchia, Hanks, and Bland.
1. Because appellees, Medical Legal Evaluations, Inc. and Bruce L. Halbridge, M.D.
(collectively "Halbridge") concede that general jurisdiction was not alleged as a basis for the
exercise of personal jurisdiction in the trial court, we need not address TCG and Gibbs's
fourth issue on appeal relating to general jurisdiction. 
2. TASA was dismissed with prejudice from the instant dispute and is not a party to this appeal.
3. Halbridge also sued TASA, but it is not a party to this appeal.
4. The long-arm statute permits Texas courts to exercise personal jurisdiction over a
nonresident defendant that "does business" in Texas. The statute provides that a nonresident
"does business" in this state if the nonresident: 


(1) contracts by mail or otherwise with a Texas resident and either party is
to perform the contract in whole or in part in this state; 


(2) commits a tort in whole or in part in this state; or

 

(3) recruits Texas residents, directly or through an intermediary located in
this state, for employment inside or outside this state. 


Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). 
5. In determining whether assumption of jurisdiction by the forum state would offend
traditional notions of fair play and substantial justice, consideration is given to (1) the burden
on the defendant, (2) the interest of the forum state in adjudicating the dispute, (3) the
plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial
system's interest in obtaining the most efficient resolution of controversies, and (5) the
shared interest of the several states in furthering fundamental substantive social policies. 
Guardian Royal Exch., 815 S.W.2d at 231. 
6. TCG and Gibbs argue that Halbridge waived this jurisdictional basis because he failed to
assert it in his pleadings. The jurisdictional section of Halbridge's amended petition alleges
that TCG and Gibbs are doing business in Texas by "entering into contracts by mail or
otherwise with Texas residents where either party is to perform the contract in whole or in
part in Texas, by advertising its services nationwide and in Texas and by committing torts
in Texas and/or committing torts directed at Texas residents." Thus, Halbridge did not
specifically list the recruitment of a Texas resident for employment as a basis for jurisdiction
in his pleadings. He did, however, assert this basis in his written response to TCG's and
Gibbs's special appearance and in his arguments at the special appearance hearing. Rule
120a(3) of the Texas Rules of Civil Procedure provides that "[t]he court shall determine the
special appearance on the basis of the pleadings, any stipulations made by and between the
parties, such affidavits and attachments as may be filed by the parties, the results of discovery
processes, and any oral testimony." Tex. R. Civ. P. 120a(3). Because the rule does not limit
the court to determining the special appearance on the pleadings alone, we conclude that this
argument is presented for our review.
7. Suzanne Olita, TASA's president, testified that all calls made to the Texas telephone number
are forwarded directly to Pennsylvania. "There is no answering service or other person
physically present in Texas answering telephones or conducting any other business in Texas."